IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


ATLANTIC CASUALTY
INSURANCE COMPANY                                                    PLAINTIFF

V.                              Case No. 4:15-CV-04103

PARADISE CLUB;
ISMAEL ARANDA; and
BRANDI COODY                                                         DEFENDANTS


<u>**MEMORANDUM OPINION**</u>

Before the Court is a Motion for Summary Judgment filed by Plaintiff Atlantic Casualty Insurance Company ("Atlantic Casualty"). ECF No. 19. Separate Defendant Brandi Coody (ECF No. 22) and Separate Defendants Ismael Aranda and Paradise Club (ECF No. 30) have filed responses. Plaintiff has filed a reply (ECF No. 25) to Separate Defendant Coody's response. The Court finds this matter ripe for consideration.

**I. BACKGROUND**

On August 31, 2015, Separate Defendant Brandi Coody filed suit against Separate Defendant Paradise Club in the Circuit Court of Miller County, Arkansas. ECF No. 1-2. In her Complaint, Coody alleges that "[o]n or about May 9, 2015, at approximately 1:47 am, [she] was a business invitee upon the premises of Paradise Club at its place of business" for the purpose of watching her boyfriend take part in the boxing activities hosted by Paradise Club. ECF No. 1-2. Coody alleges that the "occupancy of the Paradise Club exceeded the limit set by the local fire marshal[]" and, following an altercation of some type, "[g]unshots were fired, and [Coody] was struck by the gunfire." ECF No. 1-2. Coody further alleges that Paradise Club "acting by and through its agents, servants, or employees committed acts and omissions constituting negligence

which were a direct and proximate cause of the injuries and damages sustained by Coody."
Coody prays for compensatory and punitive damages. ECF No. 1-2.

On October 7, 2015, Plaintiff Atlantic Casualty filed a Complaint for Declaratory
Judgment in this Court. ECF No. 1. Plaintiff is a North Carolina company with its principal place
of business in North Carolina, doing business in Arkansas as a non-resident insurer. Plaintiff
issued insurance policy number M202001243 (the "policy") to Paradise Club, Aranda Ismael
DBA, which covered the period between February 13, 2015, and February 13, 2016. That policy
provided, in relevant part:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

SECTION I - COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE
LIABILITY

1.      Insuring Agreement

> a. We will pay those sums that the insured becomes legally obligated to
> pay as damages because of "bodily injury" or "property damage" to
> which this insurance applies. We will have the right and the duty to
> defend the insured against any "suit" seeking covered damages. We will
> have the right, but not the duty, to defend the insured against any "suit"
> for which we dispute coverage. We will have no duty to defend or
> indemnify the insured against any "suit" seeking damages for "bodily
> injury" or "property damage" to which this insurance does not apply.
>
> We may look to extrinsic evidence outside of the allegations and/or
> facts pleaded by any claimant to determine whether we owe a duty to
> defend or indemnify against a lawsuit seeking "bodily injury" or
> "property damage," provided that extrinsic evidence does not contradict
> a claimant's pleaded allegation and provided that evidence relates to a
> discrete coverage issue under the policy and not a merits or liability
> issue. We may, at our discretion investigate any "occurrence" and settle
> any claim or "suit" that may result.  But:
>
> (1) The amount we will pay for damages is limited as described in
> Section III – LIMITS OF INSURANCE; and

2

(2)  Our right and duty to defend a claim to which this insurance applies ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under COVERAGES A or B or medical expenses under COVERAGE C.

## EXCLUSION - PUNITIVE DAMAGES

This insurance does not apply to any claim of or indemnification for punitive, exemplary and/or statutorily enhanced damages, including, but not limited to, multiple damages. If a "suit" seeking compensatory and punitive, exemplary and/or statutorily enhanced damages, including, but not limited to, multiple damages has been brought against you for a claim covered by this policy, we will provide defense for such action. We will not have any obligation to pay for any costs, interests or damages attributable to punitive, exemplary and/or statutorily enhanced damages, including, but not limited to, multiple damages.

## EXCLUSION - ASSAULT AND/OR BATTERY

1.     This insurance does not apply to and we have no duty to defend any claims or "suits" for "bodily injury", "property damage" or "personal and advertising injury" arising in whole or in part out of:

   a)  the actual or threatened assault and/or battery whether caused by or at the instigation or direction of any insured, his employees, patrons or any other person;

   b)  the failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault and/or battery;

   c)  the negligent

        (i) employment;
        (ii) investigation;
        (iii) supervision;
        (iv) training;
        (v) retention

      of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) or (b) above.

   d)  any actual or alleged injury arises out of any combination of an assault and/or battery-related cause and a non-assault or battery-related cause;

   e)  any actual or alleged injury arises out of a chain of events which includes assault and/or battery, regardless of whether the assault

3

and/or battery is the initial precipitating event or a substantial cause of injury;

    f)   any actual or alleged injury arises out of assault and/or battery as a concurrent cause of injury, regardless of whether the assault and/or battery is the proximate cause of injury; or

    g)   claims arising out of, caused by, resulting from, or alleging, in whole or in part, any insured's failure to thwart, foil, avoid, hinder, stop, lessen or prevent any attack, fight, assault and/or battery, theft, or crime.

2.     For the purposes of this endorsement, the words, "assault and/or battery" are intended to include, but are not limited to, sexual assault.

3.     For the purposes of this endorsement, the words, "assault and/or battery" are intended to include, but are not limited to, injury of any kind resulting from the use, or threatened use, of a gun, firearm, knife or weapon of any kind.

LIMITATION - DUTY TO DEFEND

Where there is no coverage under this policy, there is no duty to defend any insured.

Our determination regarding a defense obligation under this policy may be made on documentation, evidence, or information extrinsic to any complaint or pleading presented to us, provided such documentation, evidence or information does not contradict a pleaded allegation and provided such documentation, evidence or information relates solely to a discrete coverage issue under this policy.

Plaintiff argues that, in light of these policy provisions, the injury Coody suffered is not covered by the policy issued to Paradise Club and Ismael Aranda, and that Plaintiff, therefore, has no duty to defend. Thus, Plaintiff seeks an Order from this Court declaring that "the policy of insurance affords no liability coverage to Paradise Club or Ismael Aranda and . . . that [Plaintiff] has no obligation to provide a defense for any Defendant in the underlying litigation filed by Brandi Coody that is pending in the Circuit Court of Miller County, Arkansas." ECF No. 19. Plaintiff also prays that the Court enter an Order, pursuant to the Punitive Damages Exclusion quoted above, "that, even if coverage was otherwise owed, [Plaintiff] has no

4

obligation to indemnify Paradise Club or Ismael Aranda for any claim for punitive damages asserted against them in the underlying litigation." ECF No. 19.

In response, Separate Defendant Coody argues that the Assault and Battery Exclusion found in the policy does not apply to the facts as alleged in her Complaint, as she did not allege, and Plaintiffs have not offered evidence that, an assault or battery occurred on the premises. ECF No. 22. The basis for Coody's argument that her Complaint did not allege that an assault or battery, as defined in the policy, took place is that, although the Complaint stated that gunshots were fired and she was struck by the gunfire, the gun could have accidentally discharged and was thus not in "use." ECF No. 23. She argues that the events which led to her injury do not necessarily fall under the policy definition of "assault and/or battery." Ultimately, Coody is arguing that the term "use" is ambiguous, and therefore constitutes a genuine issue of material fact. She further argues that the issue of whether an "assault" or "battery" occurred is not necessary to her claim, explaining that the court in the underlying litigation could find her injury compensable without finding that an "assault" or "battery" took place. ECF No. 22. Separate Defendant Coody also argues that the Punitive Damages Exclusion contained in the policy violates Ark. Code Ann. § 23-79-307(8) and is, therefore, void.

In its reply, Plaintiff contends that "use," as meant in the definition of "assault and/or battery," is broad enough to apply to any "discharge of a firearm, whether intentional or accidental and any other interpretation of the phrase would not be reasonable." ECF No. 25. Thus, Plaintiff argues, the word "use" is unambiguous and therefore the question of whether the Assault and Battery Exclusion applies is a question of law for the Court to decide.  Plaintiff further contends that the Punitive Damages Exclusion does not offend Ark. Code Ann. § 23-79-307(8) because the language used in the exclusion is "substantially similar to the required definition of punitive damages contained in Section 23-79-307(8)." ECF No. 25.

On October 12, 2016, Separate Defendants Paradise Club and Ismael Aranda filed a Response to Plaintiff's Motion for Summary Judgment.[1] ECF No. 30. In their Response they argue, much like Separate Defendant Coody, that the term "use" in the "assault and/or battery" definition is ambiguous, and therefore a question of fact exists. Further, they argue that because the present situation may be one that is covered by the insurance policy, Plaintiff has a duty to defend them in the underlying state court litigation.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); s*ee also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986). "[T]he interpretation and construction of insurance policies is a matter of law, and therefore, such cases are particularly amenable to summary judgment." *John Deere Ins. Co. v. Shamrock Indus., Inc.*, 929 F.2d 413, 417 (8th Cir. 1991). A fact is material only when its resolution affects the outcome of the case.

---

[1] On October 5, 2016, this Court entered an Order granting Separate Defendants Paradise Club and Ismael Arandas' Motion for Enlargement of Time, thereby giving Separate Defendants up to and including October 12, 2016, to file their response to Plaintiff's summary judgment motion. ECF No. 29.

*Anderson*, 477 U.S. at 248.  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. County of LeSueur*, 47 F.3d 953, 957 (8th Cir.1995).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial.  *Anderson*, 477 U.S. at 256.

### III. DISCUSSION

The Court will address whether summary judgment is warranted on each of Plaintiff's claims:  (1) whether the present situation, as plead, gives rise to a duty to defend; (2) whether the present situation falls under the Assault and Battery Exclusion; and (3) whether the Punitive Damages Exclusion is valid and enforceable.

### A.  Duty to Defend

The issue of whether Plaintiff has a duty to defend Separate Defendants Paradise Club and Ismael Aranda in the underlying state court litigation turns on the allegations made in Coody's initial Complaint.

The allegations in the pleadings against the insured generally determine whether the insurer has a duty to defend. *Scottsdale Ins. Co. v. Morrow Land Valley Co., LLC*, 411 S.W.3d 184, 190 (Ark. 2012); *Murphy Oil USA, Inc. v. Unigard Sec. Ins. Co.,* 61 S.W.3d 807, 812 (Ark. 2001). "If injury or damage within the policy coverage could result from the underlying suit, the

duty to defend arises." *Home Indemnity Co. v. City of Marianna*, 727 S.W.2d 375, 379 (Ark. 1987). "To trigger a duty to defend . . . the complaint must allege facts that would come within the coverage of the policy." *Scottsdale Ins. Co.*, 411 S.W.3d at 190-191. Where "there is no possibility that the damage alleged in the complaint may fall within the policy coverage, there is no duty to defend." *Id*. at 190.

Here, in her initial state court Complaint (ECF No. 1-2), Separate Defendant Coody alleges that she was injured by gunfire while attending an event on the premises of the Paradise Club. Her injuries, she alleges, "were a direct and proximate cause" of Separate Defendant Paradise Club's negligent acts or omissions. ECF No. 1-2. Coody does not allege that an assault or battery, using either the common law definition or policy definition, occurred. Instead, she bases her right to relief on Paradise Club's negligence. By wording her Complaint in this way and basing her claim on a theory of negligence, it is clear that "injury or damage within the policy coverage could result from the underlying suit," as the state trial court may find that Coody is entitled to relief because of Paradise Club's negligence.[2] Thus, it is evident that Coody has alleged facts that may fall under the coverage issued by Plaintiff to Paradise Club and Ismael Aranda. As such, the duty to defend has been triggered and Plaintiff Atlantic Casualty has a duty to defend Paradise Club and Ismael Aranda in the underlying state court litigation. Because of this, Plaintiff is not entitled to summary judgment in regards to this issue and it is therefore denied.

**B.   Coverage under the Assault and Battery Exclusion**

Plaintiff asks the Court to find that "no liability coverage is owed to Paradise Club or Ismael Aranda with respect to claims made against them by Brandi Coody." ECF No. 19, p. 1. In other words, Plaintiff seeks an Order declaring that the situation that gave rise to this litigation is

---

[2] The state trial court could award relief solely on the question of negligence on the part of Paradise Club and never reach the issue of whether an "assault" or "battery" within the policy definition took place.

one that falls under the Assault and Battery Exclusion of the insurance policy covering Separate Defendants Paradise Club and Ismael Aranda. The issue of whether the claim falls under the Assault and Battery Exclusion turns on the meaning of the word "use" as included in the policy definition of "assault and/or battery." Therefore, this Court must determine the meaning of the word "use" as included in the Exclusion and whether that provision is ambiguous.

"[W]hen federal courts are exercising diversity jurisdiction, the rules for construing insurance policies are controlled by state law." *Langley v. Allstate Ins. Co*., 995 F.2d 841, 844 (8th Cir. 1993) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 72–73 (1938) and *Interco Inc. v. National Sur. Corp.,* 900 F.2d 1264, 1266 (8th Cir. 1990)). The present case is before the Court under diversity jurisdiction. Therefore, the interpretation of the disputed contract language is governed by Arkansas law.

Arkansas courts hold that "contracts of insurance should receive a practical, reasonable, and fair interpretation consonant with the apparent object and intent of the parties in light of their general object and purpose." *Parker v. S. Farm Bureau Cas. Ins. Co.*, 292 S.W.3d 311, 315 (Ark. Ct. App. 2009). When determining the meaning of insurance policies words must be construed in their plain, ordinary, and popular sense. *Langley*, 995 F.2d at 844-845 (applying Arkansas state law). "[W]here a term is defined in the policy; the court is bound by the policy definition." *Nationwide Mut. Ins. Co. v. Worthey*, 861 S.W.2d 307, 310 (Ark. 1993).

If the language of the policy is unambiguous, a court will give effect to the plain language of the policy without resorting to the rules of construction. *Elam v. First Unum Life Ins. Co.*, 57 S.W.3d 165, 169 (Ark. 2001). "Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation." *Id*. "[I]f the language is ambiguous," a court "will construe the policy liberally in favor of the insured and strictly against the insurer." *Id*. "[W]here the issue of ambiguity may be

resolved by reviewing the language of the contract itself, it is the trial court's duty to make such a determination as a matter of law." *Id*. "The construction and legal effect of written contracts are matters to be determined by the court, not by the jury, *except* when the meaning of the language depends upon disputed extrinsic evidence." *State Auto Prop. & Cas. Ins. Co. v. Ark. Dep't of Envtl. Quality*, 258 S.W.3d 736, 743 (Ark. 2007).

A court must consider the whole policy to determine the meaning of a particular clause within it. *Cont'l Cas. Co. v. Davidson*, 463 S.W.2d 652, 655 (Ark. 1971). "Whatever the construction of a particular clause standing alone may be, it must be read in connection with other clauses limiting or extending the insurer's liability." *Id*.

Here, the language at issue contained in the above-referenced Assault and Battery Exclusion is as follows:

> For the purposes of this endorsement, the words, "assault and/or battery" are intended to include, but are not limited to, injury of any kind resulting from the *use*, or threatened use, of a gun, firearm, knife or weapon of any kind.

(emphasis added). Plaintiff argues the word "use" is extremely broad, and includes both the intentional as well as accidental discharge of a gun.[3] ECF No. 25. Separate Defendant Coody argues that the term "use" in the above definition is ambiguous and therefore the meaning is a question of fact for a jury to determine. ECF No. 23. The word "use" is never defined in the policy issued by Plaintiff. Because the policy leaves the term undefined, the Court must determine if the term is ambiguous by examining whether the policy provision is clear when utilizing the "plain, ordinary, and popular sense" of the word "use." Further, the Court must look at the term in the context in which it appears in order to determine its meaning.

---

[3] Plaintiff argues that any "discharge" of a gun constitutes "use" of a gun. ECF 25, p. 5. Plaintiff seems to believe that the words "discharge" and "use," when referring to a firearm, are synonymous. However, if that is Plaintiff's belief, it is unclear why Plaintiff would use the much less specific term "use" in the definition of "assault and/or battery" when the exclusion is meant to cover any injury caused by "discharge" of a gun.

In the present case, the word "use" is included in the policy definition of "assault and/or battery." The Court is bound to the definition of the terms as defined in the policy and, therefore, the definition of "assault and/or battery" in the policy supersedes the common law or popular definitions of those words. However, the definition provided in the policy fails to explicitly state whether intent or volition is required on the part of the party causing the injury. That being said, the inclusion of the word "use" in the policy establishes that, in the very least, some volitional action is required on the part of the party who causes the injury. The word "use," in the "plain, ordinary, and popular sense," necessarily implies a "user" who has the ability to employ an object as a means to achieve some ends.[4]

Further, taking into account the context in which "use" appears, namely, a provision discussing "assault and/or battery" and in conjunction with the terms "gun, firearm, knife, or *weapon* of any kind," it becomes clear that in order to fall under the exclusion not only must the injury be caused by a volitional act, but the user must be utilizing the gun as one would any weapon: as a means of intimidation or causing injury. Such an interpretation is in accord with the terms in a "plain, ordinary, and popular sense" and is a "practical, reasonable, and fair interpretation consonant with the apparent object and intent of the parties in light of their general object and purpose."

Therefore, for an assault or battery to occur, as defined by the policy terms, there must be injury caused by a person utilizing a "gun, firearm, knife or weapon of any kind" for the purpose of intimidating another or causing injury to another. As such, under this plain understanding, the issue of whether the discharge was intentional or unintentional is immaterial;

---

[4] The Court agrees with Plaintiff that the term "use" does not require intentional action, but finds that the term does require some volitional action on the part of an actor. Although the Court is bound to interpret the terms of the policy as defined by the policy provisions, this understanding of the terms is further supported by traditional understandings of "assault" and "battery." *See, e.g.*, AMI Civ. 417 & 418 (2015) (Arkansas model jury instructions for the torts of assault and battery, respectively, with each requiring the plaintiff to prove that the defendant acted volitionally).

the issue is whether the gun, when it discharged, was being used as a means of intimidation or causing injury. Thus it is evident that the terms of the Assault and Battery Exclusion are not ambiguous when given a plain reading and taking into account the context in which the provision appears.

At this time the Court has not been provided with undisputed facts sufficient to determine whether the current situation falls under the Assault and Battery Exclusion. Neither party has presented evidence as to the question of whether the gun was being used as a means of causing intimidation or injury when it discharged. As such, there is a material factual issue that needs to be determined in the underlying litigation by the state court as fact-finder. Therefore, summary judgment is not appropriate at this time and should be denied.

### C.  Validity of Punitive Damages Exclusion

Plaintiff also argues that it has no duty to indemnify Separate Defendants Paradise Club and Ismael Aranda, pursuant to the Punitive Damages Exclusion contained in the policy, for any punitive damages awarded. Paradise Club and Ismael Aranda argue that the Punitive Damages Exclusion is void for violating Ark. Code Ann. § 23-79-307(8). Ark. Code Ann. § 23-79-307(8) states that "[p]olicies containing an exclusion for punitive damages must include a definition of punitive damages substantially similar to the following: 'Punitive damages' are damages that may be imposed to punish a wrongdoer and to deter others from similar conduct."

In the present case, the Punitive Damages Exclusion states:

This insurance does not apply to any claim of or indemnification for punitive, exemplary and/or statutorily enhanced damages, including, but not limited to, multiple damages. If a "suit" seeking compensatory and punitive, exemplary and/or statutorily enhanced damages, including, but not limited to, multiple damages has been brought against you for a claim covered by this policy, we will provide defense for such action. We will not have any obligation to pay for any costs, interests or damages attributable to punitive, exemplary and/or statutorily enhanced damages, including, but not limited to, multiple damages.

12

Clearly, the text of the exclusion fails to define "punitive damages." Plaintiff cites an unreported case from the United States District Court for the Eastern District of Arkansas to support their proposition that language contained in the above exclusion is "substantially similar" to the definition found in Ark. Code Ann. § 23-79-307(8). In *Floyd's Chipmill, Inc. v. Indiana Lumbermens Mutual Ins. Company*, the District Court found that the language used in a punitive damages exclusion was "substantially similar" to the definition of "punitive damages" found in Ark. Code Ann. § 23-79-307(8). 2011 WL 839127, at *4 (E.D. Ark. Mar. 7, 2011). The Court, therefore, refused to find that the endorsements were void and unenforceable under Ark. Code Ann. § 23-79-307(8). *Id*. The language at issue was as follows:

> When this endorsement is attached to your policy, you have no coverage for any extra contractual damages, which also may be characterized as punitive or exemplary damages. These damages may be stated as, but not limited to *fines*, *penalties* or multiplication of compensatory awards. It does not matter what the award is called. If the damages are not compensatory, they will be considered to be punitive or exemplary, and we will not pay them.

*Id*. (emphasis added). The Court failed to give guidance as to why it found the contractual language "substantially similar." That being said, the clause at issue in *Floyd's Chipmill* differs in a significant way from the language in the insurance policy at the heart of the present litigation. In *Floyd's Chipmill*, the exclusion explicitly stated that "punitive damages" included such damages as "fines" and "penalties," thus making it clear to the average reader, based on the common understanding of those terms, that punitive damages were a means of punishment and deterrence as required by Ark. Code Ann. § 23-79-307(8).

Plaintiffs argue that the present clause has "substantially similar" language in that it "describes punitive damages as distinguishable from compensatory damages and also as multiple damages and statutorily enhanced damages." ECF No. 25. However, Plaintiffs put emphasis on the wrong issue. The language used in Ark. Code Ann. § 23-79-307(8) makes clear that punitive damages are meant as a means of punishment and deterrence. The language in the clause at issue

in *Floyd's Chipmill* had a similar function and effect as the language found in Ark. Code Ann. § 23-79-307(8). The language used in the Punitive Damages Exclusion found in the policy presently at issue does not convey to the average reader that "punitive damages" are awarded as a means of punishment and deterrence. Therefore, the Punitive Damages Exclusion before the Court does not have language "substantially similar" to the language found in Ark. Code Ann. § 23-79-307(8) and is void.

Thus, on this issue, summary judgment should be denied.

### IV. CONCLUSION

For the reasons stated above, the Court finds that Plaintiff's Motion for Summary Judgment (ECF No. 19) should be and hereby is **DENIED**.

**IT IS SO ORDERED**, on this 4th day of November, 2016.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

14